**Bobby HART and Carolyn Hart, Appellants,**

v.

**Dr. Robert Lee WRIGHT and Huguley Memorial Medical Center a/k/a Huguley Health System a/k/a Adventist Health System/Sunbelt, Inc., Appellees.**

No. 2–99–234–CV.

Court of Appeals of Texas, Fort Worth.

April 20, 2000.

Rehearing Overruled May 18, 2000.

Danny Duane Pitzer, Arlington, for Appellant.

Wallach & Moore, P.C., Jennifer M. Andrews, D. Michael Wallach, Wesley T.D. Myers, Fort Worth, Watson, Caraway, Harrington, Midkiff & Luningham, L.L.P., Brooks Harrington, Fort Worth, for Appellees.

## OPINION

DIXON W. HOLMAN, Justice.

### I. BACKGROUND

On January 22, 1996, Appellant Bobby Hart fell in his backyard. He began sweating, became flushed, and experienced pain in his arms, neck, and chest. Carolyn Hart drove Mr. Hart to Huguley Memorial Medical Center (Huguley) where he was admitted to the emergency room. Mr. Hart began vomiting and described feeling like "something was sitting on his chest." Mr. Hart's neck and chest were x-rayed, and a cat scan was ordered. Mr. Hart was given a shot and released later that day, but the following morning, he was admitted to Harris Hospital (Harris). An examination and tests indicated that he had suffered an inferior wall myocardial infarction. Cardiac catheterization revealed a complete occlusion of the left anterior descending coronary artery.

Appellants filed suit on January 21, 1998 against Huguley and the treating doctors at Huguley. Appellants alleged Appellees were negligent in their treatment and care of Mr. Hart, violations of the Deceptive Trade Practices Act (DTPA), and breach

of good faith and fair dealing. Ms. Hart also sued to recover damages from the loss of support, advice, counsel, companionship, and consortium stemming from Appellees' alleged negligence and for mental anguish damages.

Appellees filed motions to dismiss with prejudice pursuant to Appellants' failure to file their expert report as required by TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1) (Vernon Supp.2000). Appellants responded by offering a report from Dr. Hrishi Maewal, which purported to comply with article 4590i, section 13.01(d)(1). Appellants then filed a motion to extend time to file an expert affidavit. On October 15, 1998, the trial court held a hearing on Appellees' motions to dismiss and found that Appellants had failed to furnish a report pursuant to article 4590i, section 13.01(d) in a timely manner. However, the trial court also found that under article 4590i, section 13.01(g), Appellants had provided sufficient evidence of good cause to permit the late filing of Dr. Maewal's report; thus, the court granted Appellants' motion to extend time to file the expert affidavit. The court postponed its ruling on Appellees' claims that Dr. Maewal's report was insufficient under article 4590i, section 13.01(r)(6).

On December 10, 1998, the trial court held a hearing on Appellees' motion to strike Dr. Maewal's report and denied it in addition to their motion to dismiss. Appellees filed another motion asking the court to reconsider the motion. The court reversed itself and found that Dr. Maewal's report was insufficient as a matter of law and dismissed Appellants' entire cause of action.

## II. ISSUES ON APPEAL

Appellants contend in their first issue that the trial court erred by striking Dr. Maewal's expert report and by dismissing their health care claim. In their second issue, Appellants insist that the trial court erred by dismissing their fraud and breach of fiduciary duty claims.

## III. EXPERT REPORT OF DR. MAEWAL

 We review a trial court's order dismissing a case with prejudice pursuant to article 4590i, section 13.01(e)(3) under an abuse of discretion. *See Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.—San Antonio 1999, pet. denied); *Estrello v. Elboar,* 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.). *But see Palacios v. American Transitional Care Ctrs.,* 4 S.W.3d 857, 860 (Tex.App.—Houston [1 st Dist.] 1999, pet. filed) (applying summary judgment standard of review, which we decline to follow).[1] An abuse of discretion occurs when a trial court acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). To the contrary, an abuse of discretion does not occur where the trial court bases its decision on conflicting evidence, *see Kirkpatrick v. Memorial Hosp.,* 862 S.W.2d 762, 776 (Tex. App.—Dallas 1993, writ denied), or where there is some evidence of a substantive and probative character to support the trial court's decision. *See Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.—Hous-

1. A claimant under article 4590i must provide opposing parties one or more expert reports within 180 days after filing the claim. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1). Failure to do so can result in the dismissal of the claimant's case. *See id.* § 13.01(e)(3). Section 13.01(e) specifically describes such a dismissal as a "sanction" against the claimant. *See id.* Sanctions are typically reviewed

under an abuse-of-discretion standard. *See Stites v. Gillum,* 872 S.W.2d 786, 788 (Tex. App.—Fort Worth 1994, writ denied). We are bound by the plain language of section 13.01(e) and the common meaning of the term "sanction." Therefore, we will review Appellants' issue under an abuse-of-discretion standard.

ton [1st Dist.] 1993, writ denied). We must therefore examine the evidence in the light most favorable to the trial court's order.

The Medical Liability and Insurance Improvement Act (the Act) was enacted by the Texas Legislature to curtail frivolous claims against physicians and related health care providers. *See Horsley–Layman v. Angeles,* 968 S.W.2d 533, 537 (Tex.App.—Texarkana 1998, no pet.). Under the Act, a plaintiff must provide each defending physician or health care provider one or more expert reports, along with a curriculum vitae, not later than the 180th day after the date on which a health care liability action is filed. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d)(1). If a plaintiff fails to comply with this provision and the defendant files a motion seeking sanctions, a trial court has no discretion and must enter an order dismissing the case with prejudice. *See id.* § 13.01(e)(3).

But where an expert report is tendered to the opposing party, the party is permitted to challenge the report's adequacy. *See id.* § 13.01(*l*). The court must grant the motion if it appears to the court, after conducting a hearing, that the report does not represent a good faith effort to meet the requirements of an expert report. *See id.* An expert report is defined as any report written by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding: (1) the applicable standard of care; (2) the manner in which the care rendered by defendant failed to meet the standard of care; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See id.* § 13.01(r)(6).

Appellants offered this written report of Dr. Maewal in affidavit form to comply with their obligation under the Act:

My name is Hrishi K. Maewal. I am over the age of majority, I have never been convicted of a felony or a crime of moral turpitude, and I am in all things qualified to make this affidavit.

I am a physician licensed to practice medicine in the State of Texas.

I am currently practicing medicine and was practicing medicine on January 22, 1996.

I am board certified in Internal Medicine, Pulmonary Disease, Cardiology, and Critical Care Medicine.

I examined Bobby Hart at Harris Methodist Fort Worth Hospital on January 23, 1996.

Based on the history obtained from the patient and his family members along with the supporting evidence of laboratory evaluation which showed an elevated creatine kinase of 1854 U/L, CK–MB 219.7 ng/ml and % relative index 11.9 at 10:41 a.m. along with an EKG which shows an inferior infarction with Q-waves, in my expert opinion, Mr. Hart was experiencing an acute myocardial infarction at approximately 5:00 p.m. on January 22, 1996 while a patient in the emergency room at Huguley Memorial Hospital.

Based on the above analysis, Dr. Wright, the treating physician at Huguley Memorial Hospital, and Huguley Memorial Hospital departed from the acceptable standard of care for the diagnosis, medical care, and treatment of a patient with an acute myocardial infarction.

Appellants argue that even though Dr. Maewal's report does not include all of the information required by section 13.01(r)(6), it nonetheless satisfies the definition of an expert report. We disagree because Dr. Maewal's report does not address a standard of care, deviation from that standard, or that a deviation from the standard caused injury or damages. *See id.* The report merely concludes that Mr. Hart demonstrated signs and symptoms of a heart attack at a time and place with which Dr. Maewal had no connection. For Dr. Maewal to qualify as an expert, the report had to show that he had knowledge of the accepted standards of care for the

diagnosis, care and treatment of the injury involved, how the applicable standard was breached, and how the alleged breach contributed to Appellants' injuries or damages. *See id.* §§ 13.01(r)(5), (6). While a party need not marshal all of its proof, a good faith effort in preparing an expert report must, at a minimum, attempt to incorporate the three requirements found in section 13.01(r)(6). Here, the conclusory report is not the good faith effort required by the statute. We overrule issue one.

## IV. FRAUD AND BREACH OF FIDUCIARY DUTY

▬▬ Although a plaintiff may assert a claim for common law fraud that is not governed by article 4590i, *see Shannon v. Law–Yone,* 950 S.W.2d 429, 436 (Tex. App.—Fort Worth 1997, pet. denied),[2] Texas courts have repeatedly held that a plaintiff cannot recast a health care liability claim in the language of another cause of action to circumvent the statute's purpose. *See Savage v. Psychiatric Inst.,* 965 S.W.2d 745, 751 (Tex.App.—Fort Worth 1998, pet. denied). In determining whether a plaintiff has attempted to do so, we review the underlying nature of the cause of action. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994). If, as here, the cause of action is based on the physician's breach of the accepted standard of medical care, the cause of action is nothing more than a health care liability claim, no matter how a plaintiff labels it. *See Gormley v. Stover,* 907 S.W.2d 448, 450 (Tex. 1995); *Savage,* 965 S.W.2d at 751.

In addition to their allegations of medical negligence and fraud, Appellants assert that their cause of action arose in part because Dr. Wright owed them a fiduciary duty and breached it. Appellants maintain that when Mr. Hart entered Huguley's emergency room on January 22, 1996, Dr. Wright had a fiduciary duty to inform him

that the emergency room physicians were not employees of the hospital and that it would not accept responsibility for the medical treatment those physicians administered in its emergency room.

▬▬ A physician is liable for malpractice or negligence only when there is a physician-patient relationship. *See Wilson v. Winsett,* 828 S.W.2d 231, 232–33 (Tex. App.—Amarillo 1992, writ denied). Additionally, a physician has no liability for medical malpractice unless the physician breaches that duty. *See St. John v. Pope,* 901 S.W.2d 420, 423 (Tex.1995). Breach of a fiduciary duty by misrepresentation is simply a form of fraud and deception, and although a fiduciary relationship might exist between a physician and patient in special circumstances, the description of a physician's disclosure duty to a patient in the Act addresses only a duty to disclose to the patient the risks and hazards of a medical or surgical procedure before the patient consents to undergo it. *See* TEX. REV.CIV. STAT. ANN. art. 4590i, § 6.05.

Appellants have not cited any case law or statutory law to support their contention that Dr. Wright had a fiduciary duty of the character or description asserted in their pleading and their brief on appeal. Appellants' allegations of fraud and breach of fiduciary duty by misrepresentation is but an impermissible recasting of their claim for the alleged medical malpractice. *See Gormley,* 907 S.W.2d at 450.

▬▬ Appellants also assert that they were defrauded when Mark Forrester, an insurance adjuster acting on behalf of Huguley, told them that Huguley wanted to reach a settlement with them. The parties never agreed on settlement terms. To establish a claim for common-law fraud or misrepresentation, a plaintiff must show that a material misrepresentation was made by a person who knew it was false or made the misrepresentation recklessly

---

**2.** Unlike the case before us, the plaintiff in *Shannon* did not allege that his health care providers were negligent or that they breached the acceptable standard of care. *See Shannon,* 950 S.W.2d at 437.

without any knowledge of its truth or falsity and with the intention that it would be acted upon by another; and that the other person did act in reliance and was injured as a result. *See Savage,* 965 S.W.2d at 752.

■ After carefully reviewing Appellants' petition, it is clear that their breach of fiduciary duty claim, stemming from a non-disclosure of the status of emergency room physicians, is simply a claim resulting from a breach of the accepted standard of care. There are no independent factual allegations supporting fraud other than those that relate to their medical malpractice claim. There is no proof that any representation was made, that it was false, or that it was relied on by Appellants. Although Appellants argue that the alleged misrepresentation was an affirmative omission, this is insufficient to support a finding of fraud absent a duty to speak, and we do not find one here.[3] *See Smith v. National Resort Communities, Inc.,* 585 S.W.2d 655, 658 (Tex.1979). As for the alleged misrepresentations of Mark Forrester, Appellants have failed to establish that the statements were false and that they relied on them. Moreover, Appellants seek to recover the same damages under all theories of liability.

Without their medical malpractice claim, Appellants would have no claim for fraud. Appellants' attempt to avoid dismissal under article 4590i, section 13.01 by characterizing their claims as fraud is untenable. *See Gormley,* 907 S.W.2d at 450; *Savage,* 965 S.W.2d at 751. We overrule issue two.

## V. CONCLUSION

Because the trial court did not err by dismissing Appellants' causes of action against Appellees, we affirm the trial court's judgment.

LIVINGSTON, J. filed dissenting and concurring opinion.

TERRIE LIVINGSTON, Justice, dissenting and concurring.

I respectfully dissent from the majority's conclusion as to appellants' first issue, but join in the majority's conclusion on their second issue. Therefore, I would reverse the trial court's dismissal of appellants' medical malpractice claim but affirm its dismissal of their claims based on fraud and breach of a fiduciary duty.

### What is an Expert's Report Under Article 4590i?

As noted by the majority, section 13.01(d)(1) of article 4590i requires a claimant to provide opposing parties with an expert report within 180 days of filing a claim. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d)(1) (Vernon Supp.2000). If a healthcare claimant fails to provide such a report, the trial court may dismiss the claimant's suit. *See id.* § 13.01(e)(3). While I agree with the majority that a trial court's dismissal of a claim on this basis should be treated as a sanction and therefore should be reviewed under an abuse-of-discretion standard, I do not agree with the majority's conclusion. *See Estrello v. Elboar,* 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.).

Here, appellees' motion to strike appellants' 13.01(d) expert report and to dismiss was based on its alleged inadequacy. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e)(3), (*l*), (r)(6).

Section 13.01(r)(6) of the medical liability act defines an expert report as:

---

**3.** A duty to speak may arise when a fiduciary relationship exists between parties, *see Stone v. Lawyers Title Ins. Corp.,* 537 S.W.2d 55, 67 (Tex.Civ.App.—Corpus Christi 1976), *aff'd in part & rev'd in part,* 554 S.W.2d 183 (Tex. 1977), or when a party makes a material representation relied upon by the other party that the party later finds out to be untrue and fails to reveal this change in events. *See Susanoil, Inc. v. Continental Oil Co.,* 519 S.W.2d 230, 236 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

a written report by an expert that provides a fair summary of the expert's opinion as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or healthcare provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 13.01(r)(6). Additionally, section 13.01(j) provides:

Nothing in this section shall be construed to require the filing of an expert report regarding any issue other than an issue relating to liability or causation.

*Id.* § 13.01(j).

And subsection (*l*) sets forth the parameters under which opposing counsel might challenge the *adequacy* of an expert report.

A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section.

*Id.* § 13.01(*l*). The majority agrees with appellees' challenge to the adequacy of the report because it "does not address a standard of care, deviation from that standard, or that a deviation from the standard caused injury or damages." While there are several cases that deal with the failure to timely file an expert report, there are relatively few cases that deal with the adequacy of the report in light of subsection (*l*)'s good faith attempt to comply.

I believe that this expert report shows a good faith effort to comply. First, the report is not being filed in a vacuum but against the backdrop of the pleadings that set forth the basic factual allegations to show a deviation from a standard of care that resulted in injuries. Appellants claim in their original petition:

The Defendants were negligent in their treatment of Plaintiff in the following respects:

1. In failing to take a proper medical history.
2. In negligently failing to treat Plaintiff for the symptoms [of] his arm and chest pain.
3. In failing to perform an EKG and laboratory tests, as would be indicated by his history and condition.
4. In failing to investigate all probable causes of Plaintiff's neck, arm, and chest pain, nausea and vomiting.
5. In failing to promptly diagnose and treat the myocardial infarction.
6. In releasing Plaintiff to return home without properly testing him for all symptoms.
7. In releasing Plaintiff to return home while he was in acute pain.
8. Defendants were in all probability negligent in other respects in addition to the above and foregoing and Plaintiffs reserve the right to amend their pleadings to conform to the evidence.

This information provides a backdrop against which the report may be viewed.

Second, the report reveals enough information to show that the patient was improperly diagnosed at Huguley and that the failure to diagnose departed from an appropriate standard of care. The report shows it was based on personal knowledge of the expert's interview of the patient and family, laboratory tests run and evaluated, along with an EKG. While not explaining the specific standard of care, the expert clearly states that the standard was breached.

In *Palacios v. American Transitional Care Ctrs., Inc.,* the Houston Court of Appeals was faced with reviewing an adequacy challenge to an expert's report. 4 S.W.3d 857, 859–60 (Tex.App.—Houston [1 st Dist.] 1999, pet. filed). In reversing the trial court's dismissal of the plaintiffs' claims, the appellate court, applying the

summary judgment standard of review instead of abuse of discretion, noted that the section 13.01(r)(6) expert report was designed to weed out frivolous suits in the early stages of litigation. The controlling issue is not whether the report provided the requisite "fair summary" but whether the report showed a good faith effort at meeting section 13.01(r)(6)'s requirements. *See id.* at 862. The appellate court concluded that the statements on the report were a good faith effort to meet section 13.01(r)(6)'s requirements in that it was directed toward the hospital and stated that the hospital's actions fell below the accepted standard of care. *See id.* at 861. The report noted that a hospital should have taken precautions for a patient who fell from his hospital bed and suffered yet a second brain injury when he fell due to his history of falling. *See id.* Because precautions to prevent his fall were not taken the standard of care had not been met. *See id.* at 863.

The San Antonio Court of Appeals has applied an abuse-of-discretion standard to appellate review of a dismissal of a healthcare liability claim due to an inadequate expert report. *See Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727 (Tex. App.—San Antonio 1999, no pet.). In *Schorp* the plaintiff's healthcare claim was dismissed because the "anonymous" report failed to state the name and qualifications of the expert and failed to attach the required curriculum vitae. Thus, the court reasoned there was no way to determine whether the plaintiff's expert was qualified. *See id.* at 732.

In yet another case, the Houston 14th Court of Appeals upheld a trial court's decision to strike two "expert letters or reports" noting that the letters failed to even show who was drafting the letter but appeared to be a letter requesting an expert opinion by marking a "yes" or "no" to the question of whether the defendant was negligent in his care of the plaintiff. *Tibbetts v. Gagliardi*, 2 S.W.3d 659, 662 (Tex. App.—Houston [14[th] Dist.] 1999, pet. de-

nied). Plaintiff's counsel filed an affidavit in support of her client's claim that these "yes" and "no" letters were a good faith effort to comply with the statute. *Id.* Her affidavit merely stated, however, that it was an oversight not to be aware of the definition of an expert report and that she was not consciously indifferent. *See id.* at 663. The court of appeals affirmed the dismissal and held that the expert letters were not a good faith attempt to comply with the statutory definition of an expert report. *See id.*

Here the expert report clearly identifies the expert; lists his medical training; lists his certifications; identifies the lab results and other tests that he administered to the patient and reviewed; identifies the hospital to which the complaint is directed; and, identifies the treating physician and that his care fell below the acceptable standard of care for a patient with an acute myocardial infarction. I believe this is enough to be a good faith effort to give a fair summary of the expert's opinion. This report goes much further than the reports that were struck in *Schorp* or in *Tibbetts* and is more like the report in *Palacios*. In light of an abuse-of-discretion standard, I would hold that the report was a good faith attempt to give a fair summary and would therefore hold the trial court abused its discretion in striking the report and dismissing appellant's healthcare claim. In all other respects, I agree with the majority opinion.