

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00551-CV

**SSC PLEASANTON SOUTH OPERATING COMPANY LP**
d/b/a Retama Manor Nursing Center/Pleasanton South,
Appellant

v.

Joyce **PENNINGTON**,
Individually and on behalf of the Estate of Billy Joe Pennington
and on behalf of all wrongful death beneficiaries,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 11-11-1123-CVA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  December 12, 2012

AFFIRMED

This is an interlocutory appeal of the trial court's denial of SCC Pleasanton South Operating Company's ("Pleasanton South") motion to dismiss this health care liability claim. Pleasanton South filed a motion to dismiss asserting appellee, Joyce Pennington, failed to timely serve expert reports complying with Texas Civil Practice and Remedies Code section 74.351. On appeal, Pleasanton South argues the trial court abused its discretion in denying the motion to

dismiss because (1) Michael Zeitlin, M.D., was not qualified to render an expert report, and (2) Zeitlin's expert report did not set forth the applicable standard of care, how Pleasanton South breached the standard of care, or the causal connection between the alleged breach and the appellee's damages. We affirm.

## BACKGROUND

Joyce Pennington's husband, Billy Joe Pennington, a seventy-three year old man, was admitted to Pleasanton South, a nursing home facility, as a resident on November 9, 2009. At the time of his admission, Mr. Pennington required the help of the staff for all of his daily living needs. Due to dementia, he was unable to participate in decision making. Mr. Pennington was noted as a "fall risk" when he was admitted, and his physician ordered a "tab alarm" to be placed on Mr. Pennington while he was in bed or in his wheelchair to alert staff of his movements.

On November 11, 2009, two days after he was admitted as a resident, a nurse found Mr. Pennington on the floor of his room next to his bed. Mr. Pennington's injuries were minor. One day later, on November 12, Mr. Pennington fell a second time while attempting to use the restroom unassisted. Later that same day, he fell a third time. He was then moved to a temporary room for closer observation by nursing staff. On the next day, November 13, Mr. Pennington was again found out of his bed. Approximately thirty minutes later, Mr. Pennington suffered a fourth fall and was found on the floor calling out for help. There was no indication of the staff having monitored or being informed of any "tab alarm" warnings.

Mr. Pennington was transferred to the South Texas Regional Medical Center for evaluation due to injuries sustained from his fourth fall and it was discovered he had a fractured hip. He was then transferred to Wilford Hall Medical Center where he underwent surgery on November 15, 2009, to repair the fractured hip. He died on November 27, 2009.

Almost two years later, Pennington filed suit against Pleasanton South alleging medical negligence resulting in injuries to her husband that lead to his death. Pennington filed the expert report of Dr. Michael Zeitlin. Pleasanton South's subsequent motion to dismiss was denied and this appeal followed.

## STANDARD OF REVIEW

On appeal, Pleasanton South asserts Dr. Zeitlin's expert report fails to meet the requirements of Texas Civil Practice and Remedies Code chapter 74 and thus the trial court erred in denying its motion to dismiss. We review a trial court's ruling on a motion to dismiss a case under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding principles and rules. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

"A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) (West 2008). If a trial court fails to analyze or apply the law correctly, it has abused its discretion. *Jorgensen v. Tex. MedClinic*, 327 S.W.3d 285, 287 (Tex. App.—San Antonio 2010, no pet.).

## EXPERT QUALIFICATION

In its first issue on appeal, Pleasanton South asserts Dr. Zeitlin was not qualified to render an expert report on the liability of a nursing home facility such as Pleasanton South. Specifically, Pleasanton South argues Dr. Zeitlin cannot be qualified because he is a "Regional Director of Cosmetic and Weight Loss Centers of America," and "he is not a nurse, has never practiced as a nurse, has never taken nursing courses, does not teach nursing students, and has

never published or researched on any matters dealing with the practice of nursing." Therefore, Pleasanton South concludes, Dr. Zeitlin is not qualified to offer opinions related to nursing home nurses, nursing home management, nursing home administration, or nursing home care or operations.

A person may qualify as an expert witness on the issue of whether a health care provider departed from accepted standards of care only if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. TEX. CIV. PRAC. & REM. CODE § 74.402(b).

Pleasanton South argues that because Dr. Zeitlin is the "Regional Director of Cosmetic and Weight Loss Centers of America" he cannot be qualified. However, a closer read of Dr. Zeitlin's curriculum vitae demonstrates not only is he the Regional Director in that capacity, but he also currently serves as Regional Medical Director for Travelers Medical Center as well as the Center Medical Director for Talecris Plasma Services. Additionally, Dr. Zeitlin currently has hospital staff appointments at six area hospitals. Dr. Zeitlin states in his report: "I am actively practicing medicine and rendering medical care services relevant to the issues presented in Billy Joe Pennington's claim which includes the prevention and treatment and care of geriatric patients who present signs of dementia and exhibit signs of being a fall risk."

Dr. Zeitlin's curriculum vitae also demonstrates that he is certified by the American Board of Family Practice and has his certification in geriatric medicine. Since 2003, Dr. Zeitlin has served as the chairman of the Geriatric Medicine Sub-Committee of the Bexar County Medical Society. He has also authored or co-authored multiple papers on issues pertaining to the

elderly and has given multiple lectures on the same issue. Regarding his qualifications, Dr. Zeitlin states:

> During the course of my career, I have served as a primary care physician for hospitalized and nursing home patients. I have had patients who were at a high risk of falling, who exhibited signs of dementia or an altered mental state, who were confused, and presented essentially the same type of problems as Mr. Pennington. I have written orders for the prevention and treatment of falls, i.e. fall prevention programs and I have supervised the execution of these orders by the RNs, LVNs, and CNAs who were assigned to provide the hands-on nursing care for my patients. I am therefore familiar with the standards of care in cases like these.

Dr. Zeitlin's curriculum vitae and report demonstrate he is actively practicing medicine involving the treatment of geriatric patients like Mr. Pennington "who present signs of dementia and exhibit signs of being a fall risk." He has knowledge of the accepted standards of care for dealing with elderly patients with high fall risks, and has also written fall prevention orders and supervised the execution of those orders by nurses. Dr. Zeitlin's curriculum vitae demonstrates he has the necessary training and experience to qualify him to opine on the standards of care regarding the treatment of elderly patients. Accordingly, we conclude Dr. Zeitlin was qualified to opine on whether Pleasanton South departed from accepted standards of care.

### FAIR SUMMARY

In its second issue on appeal, Pleasanton South contends Dr. Zeitlin's report was not a fair summary because it was deficient as to standard of care and breach, and deficient as to causation. Pleasanton South argues the trial court, therefore, abused its discretion in denying Pleasanton South's motion to dismiss.

Section 74.351(r)(6) requires an "expert report" to contain the expert's opinions as of the date of the report regarding (1) applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. &

REM. CODE § 74.351(r)(6). A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in section 74.351(r)(6). *Palacios*, 46 S.W.3d at 878–79 (citing *Hart v. Wright*, 16 S.W.3d 872, 877 (Tex. App.—Fort Worth 2000, pet. denied)).

In order to be considered a good-faith effort to provide a fair summary of an expert's opinions, an expert report must discuss the standard of care, breach, and causation with sufficient specificity to (1) inform the defendant of the conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude the claims have merit. *Palacios*, 46 S.W.3d at 879. A report with mere conclusions does not represent a good-faith effort to provide a fair summary and is thus deficient for failing to comply with the statutory requirements. *See id.* To go beyond mere conclusions, an expert must explain the basis of his statements and link his conclusions to the facts. *Bowie*, 79 S.W.3d at 52. As to causation, the expert must explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented. *Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010).

In his report, Dr. Zeitlin sets out the standard of care owed by Pleasanton South and the breach thereof. Dr. Zeitlin opines, in relevant part, that the "minimum standards of care" applicable to Pleasanton South included, "[t]raining and supervising its nursing personnel to ensure that they follow the nursing interventions for fall precautions in the nursing care plan and the recommendations of other disciplines," and "[t]raining and supervising its nursing personnel to ensure that they follow physician's orders regarding fall precautions."

Mr. Pennington's physician had orders in place that included instructions to the nursing staff to use and monitor a "tab alarm" and to ensure Mr. Pennington wore proper footwear to prevent falls. Dr. Zeitlin's report states that upon review of the records provided him "there were no mentions of the nursing staff responding to the tab alarms when Mr. Pennington fell . . .

rather, Mr. Pennington was discovered yelling for help." In reference to the physician's orders to ensure Mr. Pennington wore proper footwear, Dr. Zeitlin's report states his review of Mr. Pennington's medical records showed that out of the four falls Mr. Pennington suffered at Pleasanton South he was twice noted as wearing socks and twice noted as not wearing any footwear. After the fourth fall, for which Mr. Pennington was transferred to a medical center for evaluation and it was determined he had a fractured hip, Dr. Zeitlin states that his review of the records show that Mr. Pennington was noted as not wearing any footwear when he was discovered.

Dr. Zeitlin states that the failure of the nursing staff to monitor the tab alarm and to ensure Mr. Pennington had on proper footwear was a breach of the standard of care: "[Pleasanton South] failed to adequately train and supervise its nursing personnel to prevent a fall from occurring as demonstrated by the fact that the nursing personnel failed to follow the care plan and the physician's orders which collectively required Mr. Pennington's tab alarm be in place and monitored and ensuring that Mr. Pennington was wearing proper footwear."

Regarding causation, Dr. Zeitlin states:

> [I]n reasonable medical probability, the failure of Retama Manor Pleasanton South Nursing Center to comply with the minimum standard of care is a proximate cause of the fall, traumatic injuries, including the hip fracture, and resulting death of Mr. Pennington. If Retama Manor Pleasanton South Nursing Center had followed the full prevention interventions in the nursing care plan and physician's orders, then, in reasonable probability, Mr. Pennington would not have fallen and sustained the hip fracture.

Dr. Zeitlin went beyond mere conclusions by linking his conclusions to the facts: If the nursing staff of Pleasanton South had not breached the standard of care and had instead followed the fall preventions measures by ensuring Mr. Pennington wore proper footwear and by monitoring the "tab alarm" the physician ordered, Mr. Pennington would not have suffered a fall that required surgery to repair a hip fracture—a surgery from which he never recovered. The

report explained, to a reasonable degree, how Pleasanton South's breach caused Mr. Pennington's injuries, resulting in his death. Dr. Zeitlin's report, therefore, constitutes a good-faith effort to provide a fair summary because it both informs Pleasanton South of the conduct the plaintiff has called into question, and provides a basis for the trial court to conclude the claims have merit. *Palacios*, 46 S.W.3d at 879. Accordingly, we conclude Dr. Zeitlin's report was sufficient as to standard of care, breach, and causation.

## CONCLUSION

We overrule Pleasanton South's issues on appeal and we conclude the trial court did not abuse its discretion in denying Pleasanton South's motion to dismiss. We affirm the trial court's judgment.

Sandee Bryan Marion, Justice