In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-01-00756-CV
____________

FLORENCE M. STROM, Appellant

V.

MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HOSPITAL
SOUTHWEST AND MEMORIAL HOSPITAL SYSTEM, AND DR. HENRY
BLUM, INDIVIDUALLY AND D/B/A SUGAR LAND ORTHOPEDIC
ASSOCIATES, P.A., Appellees




On Appeal from the 164th District Court 
Harris County, Texas
Trial Court Cause No. 98-47318 




O P I N I O N
          Appellant, Florence M. Strom, filed health-care liability claims against
appellees, Memorial Hermann Hospital System d/b/a Memorial Hospital Southwest
and Memorial Hospital System (the hospital) and Dr. Henry Blum, individually and
d/b/a Sugar Land Orthopedic Associates (Dr. Blum). Strom appeals to challenge
orders that dismissed those claims, with prejudice, on the grounds that the expert
reports she provided to support those claims under section 13.01(d) of article 4590i,
the Medial Liability and Insurance Improvement Act, did not comply with section
13.01(r)(6) of that statute.


 We address (1) whether Strom’s expert reports constituted
a fair summary of the standard of care required by Dr. Blum and the Hospital, (2)
whether the trial court erred by refusing to grant Strom an extension of time to amend
her expert reports, (3) whether Dr. Blum waived his challenge to the adequacy of
Strom’s expert reports by not asserting the challenge until 180 days after Strom filed
suit, (4) whether the trial court erred in awarding $5,000 in attorney’s fees to the
hospital, (5) the constitutionality of article 4590i, section 13.01(d), and (6) whether
the trial court erred in dismissing Strom’s claims of fraud, intentional and fraudulent
misrepresentations, and “unnecessary surgery” against Dr. Blum. We affirm.
Background
          Strom sued the hospital claiming that hospital surgical nursing staff improperly
positioned her in preparation for neck surgery performed at the hospital October 4,
1996, and caused injury to her left knee. Strom also sued Dr. Blum, an orthopedic
surgeon who later treated the left knee and performed a total knee replacement,
claiming he was negligent and grossly negligent because the surgery was
unnecessary. Strom sued the hospital in October 1998 and sued Dr. Blum a year later. 
          On April 25, 2001, the hospital moved the trial court to either dismiss Strom’s
case against the hospital or require her to file a cost bond, on the grounds she had
missed the 90-day and the 180-day requirements of article 4590i, section 13.01 by not
filing expert reports in compliance with that statute. See Tex. Rev. Civ. Stat. Ann.
art. 4590i, § 13.01(a), (d), (e)(3) (Vernon Supp. 2003). With respect to the 180-day
requirement, the hospital acknowledged that Strom had provided expert reports in
attempted compliance with section 13.01(d),


 but argued that the reports were
“insufficient as a matter of law” under section 13.01(r)(6) because they did not
provide a “fair summary” of the applicable standard of care, how it was breached, or
the causal relationship between the alleged breach and Strom’s injuries, as required
by that section. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d), (r)(6) (Vernon
Supp. 2003). The hospital also requested attorney’s fees, as authorized by section
13.01(e)(1). See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(e)(1) (Vernon Supp.
2003). After conducting a hearing on May 14, 2001, the trial court dismissed Strom’s
claims against the hospital, with prejudice, and awarded the hospital $5,000 in
attorney’s fees and costs. 
          Four days later, on May 18, 2001, Dr. Blum filed a similar motion to dismiss. 
The trial court granted this motion and dismissed Strom’s claims against Dr. Blum in
an order signed on August 18, 2001. This order recites that the trial court considered
Strom’s counsel’s sworn testimony, and also reflects the trial court’s findings and
conclusions in granting relief. 
Standard of Review
          The abuse-of-discretion standard governs all article 4590i, section 13.01
rulings. American Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex.
2001); De Leon v. Vela, 70 S.W.3d 194, 197 (Tex. App.—San Antonio 2001, pet.
denied). This standard inquires whether the trial court acted without reference to any
guiding rules or principles. Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999);
Mueller v. Beamalloy, Inc., 994 S.W.2d 855, 858 (Tex. App.—Houston [1st Dist]
1999, no pet.). We may not reverse a discretionary decision simply because we might
have reached a different one. Mueller, 994 S.W.2d at 858. When resolving factual
issues or matters committed to the trial court’s discretion, we may not substitute our
judgment for that of the trial court. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992). 
          Dismissals with prejudice for lack of compliance with section 13.01 of article
4590i are sanctions. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(e) (Vernon
Supp. 2003) (“. . . [T]he court shall, on the motion of the affected physician or health
care provider, enter an order awarding as sanctions . . . .”); Palacios, 46 S.W.3d at
877. In contrast to findings entered in support of a judgment after a bench trial under
rule 296 of the Rules of Civil Procedure, findings entered in support of a sanction
dismissing a cause, as entered here in the order granting Dr. Blum’s motion, are not
binding on the reviewing court, although they are “helpful” in determining whether
the trial court exercised its discretion in a reasonable and principled manner. See IKB
Indus., Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 442 (Tex. 1997) (appeal from
dismissal as a sanction); Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex.
1992) (mandamus review of dismissal as a sanction). 
Dismissals with Prejudice for Insufficient Reports
          Strom’s first four points of error challenge dismissal of her claims against Dr.
Blum as an abuse of discretion. In points of error five through seven, Strom
challenges the dismissal against the hospital on the same grounds. 
          All health-care liability claims must comply with section 13.01(d) of article
4590i. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp. 2003). 
Section 13.01(d) requires that a plaintiff asserting a health-care liability claim must,
not later than 180 days after filing suit, either: (1) furnish an expert report, with
supporting curriculum vitae, to counsel for each defending physician or health-care
provider; or (2) voluntarily nonsuit the claim. Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 13.01(d) (Vernon Supp. 2003). Article 4590i defines “expert report” as a written
report that:
provides a fair summary of the expert’s opinions as of the date of the
report regarding applicable standards of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.

Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6) (Vernon Supp. 2003). 
          Section 13.01 acknowledges that medical-malpractice cases require expert
testimony and the statute was enacted to curtail frivolous lawsuits. See Palacios, 46
S.W.3d at 877; Hart v. Wright, 16 S.W.3d 872, 876 (Tex. App.—Fort Worth 2000,
pet. denied). If the plaintiff does not comply with section 13.01(d), and the defendant
seeks sanctions pursuant to section 13.01(e), the trial court must grant the relief
authorized by that section, as follows: dismiss the claim against that defendant with
prejudice; award costs and attorney’s fees to that defendant; and require that any bond
filed under section 13.01 be forfeited to pay that award. Tex. Rev. Civ. Stat. Ann.
art. 4590i, § 13.01(e)(1)-(3) (Vernon Supp. 2003); Palacios, 46 S.W.3d at 877; see
also Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l) (Vernon Supp. 2003) (“A court
shall grant a motion challenging the adequacy of an expert report only if it appears
to the court, after hearing, that the report does not represent a good faith effort to
comply with the definition of an expert report in Subsection (r)(6) of this section.”);
In re Collum & Carney Clinic Ass’n, 62 S.W.3d 924, 928 (Tex. App.—Texarkana
2001, orig. proceeding) (holding that, because noncompliance with section 13.01(d)
mandates dismissal with prejudice, trial court had no discretion to grant extension of
time to comply; granting mandamus relief to compel dismissal). 
          In assessing an expert report for compliance with sections 13.01(d) and (r)(6)
on a defendant’s section 13.01(e) motion, the dispositive inquiry is whether the report
“represents a good-faith effort” to comply with section 13.01(r)(6). See Palacios, 46
S.W.3d at 878 (citing Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6)). Because
section 13.01 focuses on the report, the only information relevant to this inquiry lies
within the four corners of the report. Id. The trial court may not look beyond the
report, therefore, in determining compliance with the statute. Id. 
          The report need not marshal all the plaintiff’s proof or meet the requirements
for evidence offered to support a summary judgment or at trial. Palacios, 46 S.W.3d
at 878-79. The report must, however, include the expert’s opinion on each of the
elements defined by section 13.01(r)(6), specifically, the standards of care, how the
defendant breached those standards, and the causal relationship between the breach
and the plaintiff’s injury. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). In
setting out these elements, the report must: (1) inform the defendant of the specific
conduct called into question by the plaintiff’s claims and (2) provide a basis from
which the trial court may conclude the claims have merit. See Palacios, 46 S.W.3d
at 879 (citing American Transitional Care Ctrs.v. Palacios, 4 S.W.3d 857, 865 (Tex.
App.—Houston [1st Dist.] 1999), rev’d, 46 S.W.3d 873 (Tex. 2001) (Taft, J.,
dissenting)). A report that merely states the expert’s conclusions about the standard
of care, breach, and causation falls short of accomplishing these two purposes. 
Palacios, 46 S.W.3d at 879. When the expert report provided in attempted
compliance with sections13.01(d) and (r)(6) contains conclusory statements that do
not alert the trial court or the defendant to the conduct the plaintiff complains of, 
section 13.01(l) affords the trial court no discretion but to conclude that the report
does not represent the “good-faith effort,” under section 13.01(l), to provide “a fair
summary” of the three elements required by section 13.01(r)(6), and no discretion but
to dismiss the cause as a sanction, as provided by section 13.01(e). Palacios, 46
S.W.3d at 880.
          Strom contends that the requirement of providing a “fair summary” is akin to
providing “fair notice” in pleadings pursuant to rule 47 of the Texas Rules of Civil
Procedure. See Tex. R. Civ. P. 47. It is apparent, however, from the cases Strom
cites that the Palacios standard for making a good-faith effort to provide a fair
summary of the expert’s opinions as to the elements of standard of care, breach, and
causation is higher than the “fair notice” requirement of rule 47.
          Standard of care, the first element required by section 13.01(r)(6) for health-care liability claims, is defined by what an ordinarily prudent health-care provider or
physician would have done under the same or similar circumstances. Palacios, 46
S.W.3d at 880. Whether a defendant breached the standard of care due a patient
cannot be determined without “specific information about what the defendant should
have done differently.” See id. (“While a ‘fair summary’ is something less than a full
statement of the applicable standard of care and how it was breached, even a fair
summary must set out what care was expected, but not given.”) (quoting from
Palacios, 4 S.W.3d at 865 (Taft, J., dissenting)). 
A.      Standard of Care—Dr. Blum
          Regarding Dr. Blum, Strom relies upon the following excerpts from the reports
of Doctors Robert A. Callewart and George W. Sibley:
          Dr. Callewart’s Report
I have reviewed the medical records furnished in the case of Myrna
Strom . . . .
 
In February of 1997, she was seen by Dr. Henry Blum, an orthopedic
surgeon, with her chief complaint involving her left knee. X-rays
showed degenerative changes with medial joint space narrowing and
some calcification in the notch, and his impression of torn medial
maniscus and chondromalacia. Again, he reports that she had no prior
history of knee related complaints prior to surgery in question [neck
surgery when the patient suffered a knee injury due to improper
positioning by the operating room nurses]. Dr. Blum performed the
manisectomy on February 12, 1997. On March 3, 1997, it is reported
that she is doing fantastic after surgery. However, on April 19, 1997,
Dr. Blum indicates the patient needs a total knee replacement, and on
July 28, 1997, reports that she is scheduled for a total knee replacement
on August 1, 1997. The total knee and carpal tunnel release were
performed by Dr. Blum on August 1, 1997. . . .
 
Based upon the records, it is my expert opinion that the total knee
and carpal tunnel release were not medically indicated. There is no
justification or very clear indication in the chart for the surgery. There
is some suggestion she had severe arthritis in the knee; however, this is
not consistent with what was reported in the knee at the time of the prior
surgery [manisectomy by Dr. Blum] or other evaluations of the knee. If
she had severe degenerative joint disease, this could not have occurred
in several months time frame from when she had the surgery of the neck
or from the time of the February 12, 1997, surgery [manisectomy by Dr.
Blum].
 
Based upon a reasonable medical probability, the records indicate
no medical basis of [sic] reason for the total knee replacement in a
woman in her middle 50's who weighs 240 lbs, who had reportedly
a normal knee prior to the operative room injury. The surgery
would therefore violate the standards of care which would be
expected to be exercised by a reasonable and prudent orthopedic
surgeon under the same or similar circumstances, and gross
negligence to submit such a patient to an unnecessary surgery. 
 
          Dr. Sibley’s Report

Based upon the medical records, the surgery of 8/1/97 [total knee and
carpal tunnel syndrome surgeries] was not indicated medically. This
apparently was unnecessary surgery. The medical records do not
contain adequate indications for the surgery performed on 8/1/97. 
A markedly obese 52-year-old lady with a short right leg is not a
candidate one would expect to have a good result from a total knee
replacement. The diagnosis of carpal tunnel syndrome seems to be
inadequate grounds to justify the surgery of 8/1/97. The surgeries
of 8/1/97 to the knee and to the wrist were unnecessary. 
 
(Emphases added by Strom’s brief for both reports.)
          Examining the two reports for a showing of what an ordinarily prudent
physician would have done under the same or similar circumstances, there simply is
no statement of the standard of care. See Palacios, 46 S.W.3d at 880. To the extent
that the reports state what an ordinarily prudent physician would not have done, i.e.,
what Dr. Blum did, the reports are addressing a breach of the standard of care rather
than the applicable standard of care itself. Because the reports fail to provide an
adequate statement of the standard of care, it is unnecessary to examine further
whether they fulfill the other two requirements for expert reports pursuant to article
4590i, section 13.01(r)(6). See De Leon v. Vela, 70 S.W.3d at 199. 
          Accordingly, we overrule Strom’s first four points of error. 
B.      Standard of Care—The Hospital
          Regarding the Hospital, Strom relies upon the following excerpts from the
reports of Doctors Sibley and Callewart:
          Dr. Sibley’s Report
On 10/4/96, Dr. Berry operated on Florence and decompressed the C7-T1 area. He noted that postoperatively, the patient for the first time
complained of her left knee.
 
On 11/1/96, an MRI of the left knee showed a tear of the posterior horn
of the medial meniscus. Dr. Staewen examined her and made the
diagnosis of the dislocated patella on the left with mild sprain of the
lateral collateral ligament. The medical records suggest that the patient,
while being strapped in the prone position for a posterior cervical
operative procedure on 10/4/96, was placed in an untoward position. 
The result was injury of the left knee . . . .
 
On 2/3/97, Florence saw Dr. Blum complaining of her left knee . . . . 
 
On 2/12/97 Dr. Blum did arthroscopic surgery of the left knee and did
a partial medial meniscectomy and chondroplasty of the left knee . . . .
 
CONCLUSION: Based upon the medical records, it appears that
the patient went into the operation of 10/4/96 without complaints of
her left knee and came out of the surgery with complaints of the left
knee. It is also noted that the patient had a short right leg and
degenerative disease of the left knee prior to the 10/4/96 surgery.
Based on the medical records, the patient’s left knee was negligently
injured while under anesthesia when she was moved from the supine
position on the gurney to the prone position on the operating table
(a twisting injury) and/or when she was placed on the operating
table with the left knee inadequately padded.
 
Dr. Callewart’s Report
 
On May [2]8, 1996, Dr. Cech performed what is described as inferior L4
and superior L5 hemilaminectomies, bilateral L4-5 medial facetectomies
and foraminotomies with decompression of the L4/L5 nerve roots and
thecal sac. The patient complained of continuing problems post-operatively; however, in a report dated July 8, 1996, she denied any
trouble with pain in the lower extremities. Based upon evaluation by
MRI, x-ray, and a cervical myelogram in August and September 1996,
Dr. John Berry suggested a cervical decompression bilaterally of C7-T1,
and possibly re-explore C5-6 bilaterally. This surgery was performed
on October 4, 1996, at the Memorial Hospital Southwest in Houston,
Texas. This surgery resulted in the patient sustaining an acute
traumatic injury in the patient’s left knee/leg; the patient being
presumably in a sitting position. The patient suffered immediate
pain and swelling of the knee postoperatively, with difficulty in
walking.
 
On October 23, 1996, it is reported that the patient complains of left
knee pain and hobbling on the left knee, which is swollen, with
decreased range of motion and tenderness. A MRI of the left knee on
November 1, 1996, showed a horizontal tear through the posterior horn
of the medial meniscus, extending to the inferior articular surface near
the free edge, and a small interior surface tear of the medial meniscus at
the junction of the posterior horn and body segment, and a grade I
medial collateral ligament sprain.
 
The knee injuries described in the MRI do not occur when the customary
and usual standards of care are exercised in the positioning and
strapping a patient on the operative table. However, the injuries can
occur when the hospital’s operating room personnel fail to take
necessary precautions to pad and avoid the placement of the leg/knee in
an abnormal position by strapping the patient to prevent movement
during surgery. It is my expert opinion, based upon a reasonable
medical probability, that the knee injuries suffered by the patient were
due to the failure of the operating room personnel to exercise ordinary
care, or negligence of the operating room personnel, in placing and
maintaining her position on the operating room table. On a follow up of
her knee pain January 8, 1997, it was noted that ‘apparently during her
recent surgery, her knees were taped in an untoward position, resulting
in some problems. Difficult to know exactly what, but it is felt that she
has some cartilage torn in the left knee.’
 
(Emphases added by Strom’s brief for both reports.) 
          Although the above reports mention that Strom’s knee injury does not normally
occur when the usual standards of care are exercised, and even note that the left knee
must not have been properly positioned or padded, the reports nevertheless fail to set
out the applicable standard of care. See Palacios, 46 S.W.3d at 880. Once again, the
most that can be said is that the reports address a breach of the standard of care by not
properly positioning or padding the leg and knee. Moreover, the reports are
conclusory regarding causation, by failing to set out the manner in which a failure to
properly pad and position the leg and knee resulted in Strom’s knee injury.
          Accordingly, we overrule Strom’s fifth through seventh points of error.
Failure to Grant Additional Time to File Complying Expert Report
          In points of error eight through ten, Strom contends the trial court abused its
discretion by refusing to grant her an additional 30 days to either amend the reports
of her experts, Drs. Sibley and Callewart, or permit Strom to file their depositions as
supplements to their reports. Strom relies on section 13.01(g) of article 4590i, which
provides as follows: 
Notwithstanding any other provision of this section, if a claimant has
failed to comply with a deadline established by Subsection (d) of this
section and after hearing the court finds that the failure of the claimant
or the claimant’s attorney was not intentional or the result of conscious
indifference but was the result of an accident or mistake, the court shall
grant a grace period of 30 days to permit the claimant to comply with
that subsection. A motion by a claimant for relief under this subsection
shall be considered timely if it is filed before any hearing on a motion
by a defendant under Subsection (e) of this section. 
Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g) (Vernon Supp. 2003).
          The record contains two requests by Strom for additional time. The first
request appears in the concluding paragraphs of Strom’s response to the hospital’s
motion to dismiss. This request refers to possible secretarial or post-office error and
appears to presume that the hospital was contending Strom did not furnish the reports
on a timely basis, as well as moving to dismiss pursuant to section 13.01(e)(3)
because the reports were insufficient. Citing section 13.01(h) of article 4590i,


 which
authorizes agreements of counsel to extend the deadlines of sections 13.01(a) or (d),
Strom’s counsel provided an affidavit documenting his and the hospital’s February
10, 1999 rule 11 agreement to extend the deadline to provide an expert report an
additional day, to April 1, 1999. The affidavit also documented Strom’s counsel’s
instructions to his support staff in accordance with that agreement. Nothing in the
record suggests that the hospital was disputing timeliness of receipt. Rather, the
record shows that, in contending Strom had not complied on a timely basis, the
hospital had taken the position that Strom had not provided complying expert reports
by the 180-day deadline, which had therefore expired. Moreover, in later documents
filed with the trial court, Strom’s counsel referred to his timely compliance with the
agreed, extended deadline as “undisputed.” Thus, there was no basis on which to
invoke section 13.01(h).
          Strom also cited section 13.02(g) of article 4590i in support of her first request
for additional time. Section 13.02(g) does not pertain, however, to expert reports. 
See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.02(g) (Vernon Supp. 2003). Strom
may have mistakenly cited section 13.02(g) instead of section 13.01(g), on which she
relies in her brief to this Court. But the “accident or mistake” documented in the
affidavit supporting Strom’s first request refers only to Strom’s having erroneously
presumed, as we have just addressed, that the hospital did not receive Strom’s reports
by the agreed, extended deadline. The first request does not refer to the “accident or
mistake” on which Strom later relied and on which she relies in this appeal. 
          Strom’s second request for additional time appears in her June 15, 2001 motion
for rehearing of the trial court’s May 24, 2001 order dismissing her case against the
hospital, with prejudice. In addition to claiming that her expert reports complied
with section 13.01 of article 4590i, Strom alternatively requested that the trial court
“extend the time to file or furnish an amended report or the depositions of Dr. Sibley
and Dr. Callewart as an amendment to the prior reports.” Strom again cited section
13.01(h) of article 4590i, governing agreements of counsel to extend preliminary
deadlines for filing expert reports. Section 13.01(h) does not apply to relief requested
of a court. 
          Strom again cited “accident or mistake” in her second request, but asserted
reasons that differed from her first request. Here, Strom clearly invoked the
provisions of section 13.01(g) of article 4590i by asserting that her failure to comply
with section 13.01(d) was neither intentional nor the result of conscious indifference,
but the result of accident or mistake. See Tex. Rev. Civ. Stat. Ann. art. 4590i, §
13.01(g). Strom’s claim of “accident or mistake” is premised on her attorney’s sworn
affidavit attesting to his “reasonable belief” that the expert reports he provided
complied with article 4590i. Strom reasserts that contention on appeal. 
          To comply with section 13.01(g), however, Strom had to file her request for
additional time before any hearing on a defendant’s motion to dismiss under section
13.01(e). See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g); see also Jackson v.
Reardon, 14 S.W.3d 816, 819 (Tex. App.—Houston [1st Dist.] 2000, no pet.)
(holding that trial court did not abuse its discretion by denying motion, which sought
additional time to file section 13.01(d) expert report, but was filed after hearing on
section 13.01(e) motion to dismiss). Here, Strom did not request additional time to
comply with section 13.01(d) on the grounds she raises in this appeal until after the
hearing on the hospital’s motion to dismiss. Accordingly, her request was not timely. 
          Because Strom’s request for additional time was not timely, the trial court did
not abuse its discretion by refusing to grant relief. We need not address, therefore,
whether Strom’s counsel’s “reasonable belief,” that the expert reports provided to
support Strom’s claims complied with sections 13.01(d) and (r)(6) of article 4590i,
constituted “accident or mistake” that warranted granting additional time to comply.
          We overrule points of error eight through ten. 
Deadline to Challenge Expert Reports
          In point of error 11, Strom contends Dr. Blum waived his right to challenge
Strom’s expert reports by waiting until 180 days after Strom filed suit. Strom
maintains that Dr. Blum had the reports and was aware of their contents, but “sat on
his hands” and waited until after the last possible date for Strom to provide a
complying expert report. Article 4590i imposes no deadline for challenging an expert
report under section 13.01(d). See Gonzalez v. El Paso Hosp. Dist., 68 S.W.3d 712,
717 (Tex. App.—El Paso 2001, no pet.); Chisholm v. Maron, 63 S.W.3d 903, 908
(Tex. App.—Amarillo 2001, no pet.); Hargrove v. Denno, 40 S.W.3d 714, 716 (Tex.
App.—San Antonio 2001, no pet.). 
          Accordingly, we overrule point of error 11.
Award of Attorney’s Fees to Hospital
          In point of error 12, Strom contends that the trial court abused its discretion in
awarding the Hospital $5,000 for attorney’s fees without evidence to support the
claim. Strom also argues that she was entitled to a jury trial on the issue of
reasonable attorney’s fees.
          Article 4590i, section 13.01(e)(1) provides that the trial court shall award
reasonable attorney’s fees as a sanction for a plaintiff’s failure to comply with the
requirements of section 13.01(d). Tex. Rev. Civ. Stat. Ann. art. 4590i, §
13.01(e)(1) (Vernon Supp. 2003). By providing that the trial court assess the
sanction, the plain language of the statute does not contemplate that a jury determine
what is reasonable as attorney’s fees. Strom does not provide any authority that
would permit the jury to determine this issue. 
          In contending that no evidence supported the trial court’s award of attorney’s
fees, Strom ignores affidavit testimony that $7,500 represented a reasonable award
of attorney’s fees in this case. This suggested fee was $2,500 more than the amount
the trial court actually awarded. In disputing the evidentiary support for the award
of attorney’s fees, Strom appears to argue that something more than an affidavit is
required, but again offers no authority to support that contention.
          We hold that the trial court did not err by awarding attorney’s fees without
convening a jury or requiring testimony beyond proof by affidavit. Accordingly, we
overrule point of error 12.
                              Constitutional Challenges to Section 13.01
          In two points of error 13, Strom contends that (1) the dismissal of her suit with
prejudice violates her state and federal constitutional guarantees of due process of
law, equal protection of the law, and right to a jury trial; and (2) the trial court abused
its discretion in dismissing Strom’s claims for fraud, intentional and fraudulent
misrepresentations, and “unnecessary surgery” because these causes of action are not
issues relating to a “medical standard” under article 4590i.
          Strom correctly asserts that article 4590i places a heavy burden on medical
malpractice plaintiffs to comply with very specific requirements and that the sanction
for failing to comply is severe, but neither violates constitutional guarantees. See
Schorp v. Baptist Mem’l Health Sys., 5 S.W.3d 727, 737-38 (Tex. App.—San Antonio
1999, no pet.); McGlothlin v. Cullington, 989 S.W.2d 449, 452-53 (Tex.
App.—Austin 1999, pet. denied). 
          As for Strom’s contention that her claims exceeded the scope of article 4590i,
settled law compels that all claims for medical negligence be brought under article
4590i. Strom’s attempt to recast her claims of negligence in advising her of the
necessity of surgery as fraud and intentional and fraudulent misrepresentations
regarding unnecessary surgery do not remove those claims from article 4590i. See
Gomez v. Matey, 55 S.W.3d 732, 735 (Tex. App.—Corpus Christi 2001, no pet.)
(holding claims of fraud and misrepresentation regarding unnecessary surgery fell
within scope of article 4590i).
          Accordingly, we overrule both of Strom’s points of error thirteen. 
 

 
          Conclusion
          We affirm the judgment of the trial court. We deny all pending motions.



     Tim Taft
                                                                        Justice

Panel consists of Justices Taft, Hanks,


 and Mirabal.




Justice Mirabal, dissenting.