**In re TENET HOSPITALS LIMITED, A Texas Limited Partnership, Relator.**

**No. 08–03–00069–CV.**

Court of Appeals of Texas, El Paso.

Aug. 28, 2003.

Rehearing Overruled Oct. 1, 2003.

---

822 

Cynthia S. Anderson, Kemp Smith, P.C., El Paso, for relator.

William E. Moody, El Paso, pro se.

Before Panel No. 5 BARAJAS, C.J., McCLURE, and WITTIG, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

In this mandamus proceeding, Tenet Hospitals Limited complains of the trial court's denial of its motion to dismiss a medical malpractice suit. The motion challenged the sufficiency of two expert reports filed by the plaintiffs below which failed to address causation as required by statute. Finding that the reports were filed in good faith, the trial court denied the motion to dismiss. We conditionally grant relief.

### FACTUAL SUMMARY

Around midnight on March 4, 2000, Raquel Arriola was admitted to the emergency room at Sierra Medical Center. She complained of pleuritic chest pain, chills, headache, diarrhea, and nausea. Her medical history revealed systemic lupus erythematosus and spleen removal. Dr. Patricia Rowley ordered a chest x–ray, ECG, and certain laboratory tests. Arriola decompensated and arrested at 3:42 a.m.

She was resuscitated, but arrested again at 5:18 a.m. and could not be revived.

Arriola's surviving children brought a medical malpractice suit against Dr. Rowley and the Hospital. With regard to Dr. Rowley, the plaintiffs alleged that she failed to properly and timely diagnose Arriola, failed to order continuous monitoring of her oxygen saturation level, and failed to order the administration of antibiotics. The hospital was purportedly negligent because no action was taken to address the abnormal ECG results, electrolyte imbalance, mild respiratory desaturation, or low white blood cell count and the staff did not monitor the patient's vital signs or her cardiac condition.

The plaintiffs timely filed two expert reports as required by the Medical Liability and Insurance Improvement Act. TEX. REV.CIV.STAT.ANN. art. 4590i, § 13.01(d)(Vernon Supp.2003). In the first, Margaret Bowers, R.N., explained that the requisite standard of care requires a nurse to administer medications such as antibiotics in accordance with the orders and instructions of the physician(s) directing the medical care of the patient. In her opinion, the nurses attending Arriola breached the standard of care by failing to administer antibiotic medications as ordered. In the second expert report, Dr. Paul K. Bronston opined that the applicable standard of care required continuous monitoring of the heart and vital signs and that the Hospital had breached the standard and violated its own chest pain protocol.

## THE STATUTE

■ The Medical Liability and Insurance Improvement Act (the Act) was enacted by the Texas Legislature to curtail frivolous claims. *Hart v. Wright,* 16 S.W.3d 872, 876 (Tex.App.-Fort Worth 2000, pet. denied); *Horsley–Layman v.*

*Angeles,* 968 S.W.2d 533, 537 (Tex.App.-Texarkana 1998, no pet.). In order to encourage the screening of medical malpractice claims by an expert prior to filing, the Act requires a plaintiff to provide each defending physician or health care provider with one or more expert reports relating to liability and causation. *Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.-San Antonio 1999, pet. denied); *see* TEX.REV. CIV.STAT.ANN. art. 4590i, § 13.01(d). The expert report, along with a *curriculum vitae* of each expert, must be furnished to the defendant not later than the 180th day after the date on which a health care liability claim is filed or the last day of any extended period as permitted under the statute. TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(d). If a plaintiff fails to comply with this provision and the defendant files a motion seeking sanctions pursuant to Section 13.01(e), a trial court has no discretion and must enter an order dismissing the case with prejudice. TEX.REV.CIV.STAT. ANN. art. 4590i, § 13.01(e)(3); *Hart,* 16 S.W.3d at 876. Where an expert report is tendered, the defendant may challenge the adequacy of the report. TEX.REV.CIV.STAT. ANN. art. 4590i, § 13.01(*l*); *Hart,* 16 S.W.3d at 876. The trial court is authorized to grant a motion to dismiss "only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section." TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(*l*). An expert report is defined as a fair summary of the expert's opinions regarding: (1) applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(r)(6).

## STANDARD OF REVIEW

■ We apply an abuse of discretion standard when reviewing a trial court's ruling on a dismissal under Section 13.01(e)(3). *American Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001); *Hart*, 16 S.W.3d at 875; *Tibbetts v. Gagliardi*, 2 S.W.3d 659, 663 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)(orig. proceeding). A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or reference to guiding principles of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)(orig. proceeding). An appellate court rarely interferes with the trial court's exercise of discretion and we may not substitute our judgment for that of the trial court. *Walker*, 827 S.W.2d at 839–40. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* Even if we would have decided the issue differently, we cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A trial court has no discretion in determining what the law is or applying the law to the facts. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840.

■ An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Walker*, 827 S.W.2d at 840. Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies. *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989).

## INADEQUACY OF THE EXPERT REPORTS

■ The sole issue for the trial court was whether the reports represented a good faith effort to comply with the statutory definition of an expert report. *Palacios*, 46 S.W.3d at 875. Because the Act focuses on the contents of the report, the only information relevant to the inquiry is contained within the four corners of the document. *Id.* The trial court should look no further than the report itself in determining whether it constitutes a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care provided failed to meet that standard, and the causal relationship between that failure and the claimed injury. *Id.*

We begin with pertinent excerpts of Nurse Bowers' report:

● I am familiar with the nursing standard of care to be applied to nurses who are involved in the treatment of patients in a hospital emergency department. I am also familiar with the ordinary practices and procedures followed by the nurses and others to prepare medical records.

● The standard of care requires a nurse to administer medications such as antibiotics in accordance with the orders and instructions of the physician(s) directing the medical care of the patient.

● I have reviewed medical records of Sierra Medical Center for the treatment of Raquel Arriola for the March 4, 2000 admission. Based upon the review, it is my opinion that the nurses involved in

the care of Ms. Arriola breached the standard of care for nurses for failing to administer antibiotic medications as ordered.

• It appears from my review of the emergency department's records that Dr. Rowley ordered the administration of antibiotics after an order given for Phenergan noted on the chart at 1:45 a.m. As for the administration of such antibiotics, however, there are no entries readily visible on the medical chart or billing records that show that the nurses fulfilled the physician's orders.

• In my professional opinion, the failure of each nurse treating Ms. Arriola to administer antibiotics as ordered by the treating physician breached the applicable standard of nursing care.

The expert report of Dr. Bronston provided:

• Ms. Arriola was a 58 years old Latina female with a history of systemic lupus erythematosus, Sjogren Syndrome and status post splenectomy in 1992. She had been on chronic Prednisone and Plaquenil therapy at the time of her visit to the Sierra Medical Center Emergency Department in El Paso, Texas on 3/4/00 at 23:30. She was seen by Dr. Patricia Rowley at 00:30 on 3/5/00.

• She decompensated and arrested at about 03:42 on 3/5/00. She was resuscitated, place on Dopamine for her hypotension and admitted to the ICU by Dr. Jesus Gomez. While in the ICU she arrested again at 05:18 and pronounced dead at 05:42.

• There were a number of violations of the standard of care in her care and treatment:

Antibiotics were ordered but she never received them;

She was not continuously monitored by a pulse oxymeter;

There was no cardiac monitoring which should have been instituted at the beginning of her admission; this was a violation of the standard of care and of Sierra Medical Center's own Chest Pain protocol;

Her vital sign needed to be monitored more frequently;

She should have been administered IV Sodium Bicarbonate.

Dr. Bronston concluded that the patient needed to have been closely monitored regarding her vital signs, her acidosis, and her increasing hypoxia and restlessness. Timely antibiotics should have been administered and the acidosis and hypoxia should have been corrected. While these reports addressed the manner in which the doctor and hospital staff allegedly breached the standard of care, they wholly failed to address the causal relationship between the breach and Arriola's death. We have previously determined that although the words "cause" or "causation" do not necessarily have to be used, some substituted word, phrase, or reference is certainly required. *Gonzalez v. El Paso Hospital District*, 68 S.W.3d 712, 716–17 (Tex.App.-El Paso 2001, no pet.).

▉ We recognize that the expert report must represent only a good faith effort to provide a fair summary of the expert's opinions. A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878, 879; *Hart*, 16 S.W.3d at 877. In detailing the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to

conclude that the claims have merit. *Wood,* 988 S.W.2d at 830. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Moreover, a report cannot constitute a good faith effort if it omits any of the statutory requirements. *Palacios,* 46 S.W.3d at 879; *see, e.g., Hart,* 16 S.W.3d at 877, (holding that a report was inadequate because it stated that the patient had a heart attack and the doctor breached the standard of care, without describing the standard of care); *Wood,* 988 S.W.2d at 831–32 (holding that an expert report did not meet the statutory requirements because it did not name the defendants, state how the defendants breached the standard of care, demonstrate causation and damages, or include a *curriculum vitae* ). Because both of the expert reports at issue here failed to address causation, there can be no finding of a good faith effort. Consequently, the trial court abused its discretion in denying the Hospital's motion to dismiss.

## INADEQUATE REMEDY AT LAW

 The Hospital contends that it has no adequate remedy at law because a post-trial appeal cannot remedy the deprivation of a statutory due process right to pretrial dismissal with prejudice. In support of its argument, it directs us to *In re Collom & Carney Clinic Ass'n,* 62 S.W.3d 924 (Tex.App.-Texarkana 2001, original proceeding). There the court found mandamus proper because the Act requires dismissal where a proper expert report is not timely filed. We agree, as has our sister court in Amarillo. *See In re Rodriguez,* 99 S.W.3d 825, 828 (Tex.App.-Amarillo 2003)(orig. proceeding); *In re Morris,* 93 S.W.3d 388, 390 (Tex.App.-Amarillo 2002)(orig. proceeding). Where a report totally omits one of the three required elements, the trial court has a ministerial duty to dismiss the lawsuit with prejudice and has no discretion to do otherwise. *Collom & Carney,* 62 S.W.3d at 928.

We pause briefly to address the issue of the plaintiffs' ability to seek an extension of time to comply with the Act. *See* TEX. REV.CIV.STAT.ANN. art. 3590i, § 13.01(g). The trial court's order found "there was no accident or mistake in filing the adequate reports." On the record, he noted:

> Well, my general feeling of it is, I don't think there is an accident or mistake here. I mean, I know you spent a lot of time talking about it, but I think their position is much clearer. They think the report is adequate. I don't see it as an accident or mistake issue. I see it as is the report adequate or not. If it is, then they can proceed. If it isn't, then it's over, you know.

We agree with his assessment and conditionally grant relief. The writ will issue only if the trial court fails to enter an order of dismissal with prejudice.

WITTIG, J. (sitting by assignment).

DON WITTIG, Senior Justice, dissenting, (Assigned).

Because I would hold that the relator, Tenet Hospitals, has an adequate remedy at law, I respectfully dissent. Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984).

Mandamus is an extraordinary remedy. *Republican Party of Texas v. Dietz,* 940 S.W.2d 86, 88 (Tex.1997); *Walker v. Packer,* 827 S.W.2d 833, 839–44 (Tex.1992). We do not have jurisdiction to issue writs of mandamus to supervise or correct incidental rulings of a trial judge where there is an adequate remedy by appeal. *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989). Without this prerequisite

limitation, appellate courts would "embroil themselves unnecessarily in incidental pretrial rulings of the trial courts" and mandamus "would soon cease to be an extraordinary writ." *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991).

Before mandamus may issue, relator must show the requirement of an inadequate remedy by appeal; this is a "fundamental tenet of writ practice." *Holloway*, 767 S.W.2d at 684; *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Two areas that allow for mandamus are representative. One circumstance allowing extraordinary interference with a trial court occurs where there is unique and compelling circumstances to summon the exercise of mandamus jurisdiction. *Dietz*, 940 S.W.2d at 93–94 (trial court ruling affecting state wide elections). Another justification for interference with a trial court would exist where some substantial right or manifest and urgent necessity. *Holloway*, 767 S.W.2d 680, 684; *Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648, 652 (1958). The relator has the burden of proof to show the inadequacy of the appellate remedy. *In re Abraham*, 22 S.W.3d 512, 515 (Tex.App.-El Paso 1999, orig. proceeding). And this burden is a heavy one. *Lutheran Social Service, Inc., v. Meyers*, 460 S.W.2d 887, 889 (Tex.1970). I would hold that relator has not met this heavy burden.

Tenet argues in its original brief that its "unique due process right" was denied, citing only *Collom* and *In re Morris*. *Collom*, 62 S.W.3d at 929–30; *In re Morris*, 93 S.W.3d 388, 390 (Tex.App.-Amarillo 2002)(orig. proceeding). The majority opinion also cites a subsequent Amarillo case, *In re Rodriguez*, 99 S.W.3d 825, 828 (Tex.App.-Amarillo 2003)(orig. proceeding). However, in both Amarillo cases mandamus was denied and those cases rely solely upon *Collom*.[1] I would also note all three of these cases address an entirely different section of Article 4590i, and simply do not address either our situation or relator's due process argument.

*Collom* specifically stated: "The issue in this case is whether the trial court, having found that the expert report filed by the plaintiff was not in compliance with the statutory requirements, and having further found that such lack of compliance was not due to accident or mistake, had a ministerial duty to dismiss the plaintiff's case with prejudice." *Collom* 62 S.W.3d at 927. It should be noted that the statutory requirement at issue was a time requirement. The trial court made two critical statutory findings: First, the export report was *not* in statutory compliance (it was over two years late); and second, the lack of compliance was *not* due to accident or mistake which could have allowed an extension for statutory compliance.[2] *See* TEX.REV.CIV. STAT.ANN. art. 4590i, § 13.01(d) & (g)(Vernon 2003). The *Collom* court stated: "We therefore hold that the trial court in this case, having made findings of noncompliance, and having made no finding consistent with the granting of the thirty-day statutory grace period, had a ministerial duty to dismiss the case with prejudice." *Id.* at 928. *Collom* expressly noted that mandamus would only lie to direct the performance of a ministerial act or duty, or to correct a clear abuse of discretion by the trial court. *Id.* at 927. Once the trial

---

1. *Collom* in turn, generally relies on mandatory deadlines found in family law, specifically parental rights, which are of constitutional dimension. I would note that enforcement of these type of statutory deadlines are ministerial acts.

2. The trial judge specifically found that: plaintiff's expert report failed to comply with TEX.REV.CIV.STAT. ANN. art. 4590i, § 13.01(d)(180 day deadline requirements).

court found a clear statutory non-compliance (a more than two year delay) and no grounds for extension, it had a *ministerial* duty to dismiss the case. *Id.* at 928. Justice Grant correctly pointed out that the court was *not* reviewing the merits of the trial court's finding on the failure of the required expert report to comply with the statute or the finding in the order that the failure to comply was not the result of an accident or mistake. *Id.* at 930. I cannot over emphasize another insightful comment by Justice Grant: "Because this was not an appeal and because the real party in interest could not appeal because that party had received a favorable ruling and also because the order was interlocutory, *the issue of the merits* of the trial court's findings *could not* be reviewed by this court." *Id.* [Emphasis added]. Yet today, this is precisely what Tenet has asked us to do. Review the judicial reasoning of the trial court, on the merits of the reports, and rendered a final judgment. Simultaneously, we summarily cut off the claimants ability to appeal the trial court's denial of their request to amend their reports.[3]

In *Collom,* the trial court expressed its order in sufficiently precise statutory terms that precluded its granting of the thirty-day grace period provided in TEX. REV.CIV.STAT.ANN. art. 4590i, § 13.01(g). *Collom,* 62 S.W.3d at 927. Even though that court ruled the report was not timely, and there was no entitlement to a grace period, that court without statutory au-

thority, rather in direct contradiction to the statute, granted a 15 day extension. We must contrast both the facts and differing statutory requirements. *Collom* is principally based on Section 13.01(g) and Section 13.01(d). The latter provides:

(d) Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:

(1) furnish to counsel for each physician or health care provider one or more expert reports, with a curriculum vitae of each expert listed in the report; or

(2) voluntarily nonsuit the action against the physician or health care provider.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(d)(Vernon 2003).

The defendants' motion in *Collom* was based on Section 13.01(d) not (*l*). *Collom,* 62 S.W.3d at 927. The *Collom* case was filed March 5, 1998. *Id.* at 926. The report was filed more than two years later on May 2, 2000. *Id.* at 927. Accordingly, under Section 13.01(e), the legislature mandated dismissal with prejudice, absent the granting of a grace period, which the trial court denied.[4] *Id.*

This case *sub judice,* involves Section 13.01(*l*). That section provides: (*l*) A

---

3. This issue is neither raised nor briefed. At a minimum, the case should be remanded to inform the trial court it was in error about the report. Obviously claimants' counsel and the trial court both thought the reports were adequate. If they were not adequate, is that not exactly the type of mistake contemplated that would allow claimants to amend and address any deficiencies?

4. Section 13.01(e) provides: "If a claimant has failed, for any defendant physician or health care provider, to comply with Subsec-

tion (d) of this section *within the time required,* the court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions against the claimant or the claimant's attorney:

(1) the reasonable attorney's fees and costs of court incurred by that defendant;

(2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the extent necessary to pay the award; and

court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection 13.01(r)(6) of this section.

As duly noted by the majority, art. 4590i allows a challenge to the adequacy of the report. TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(*l*). The trial court must grant a motion to dismiss "only if it appears to the (trial) court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection 13.01(r)(6) of this section." *Id.* Here, quite obviously, it did not appear to the trial court that the report did not represent a good faith effort to comply with the definition of an expert report. Logically then, there was not and could not be a *ministerial* duty of the trial court to dismiss as delineated in *Collom.*

It seems to me, that the legislature invested with the trial court in the first instance, not the appellate courts, the authority to determine, in its judicial discretion, the adequacy of a report. The language of Section 13.01(*l*) is totally dependant "only" on the trial court's discretion *vis a vis* the language of Section 13.01(e), which mandates dismissal when the claimant totally fails to timely file a report. While the majority opinion goes to great length to analyze the merits of the reports, that is not our function, either under the statute or in the exercise of our extraordinary writ powers.

Tenet's "due process" arguments facially fails, because the legislature left the decision of a report's adequacy with the trial court, and provided no interlocutory ap-

peal. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon 1997). In its reply brief Tenet admits: "Because the trial itself is the harm, the harm cannot be remedied by a post trial appeal." [5] The law is clear that the "cost or delay of having to go through trial and the appellate process does not make the remedy at law inadequate." *Hooks v. Fourth Court of Appeals,* 808 S.W.2d 56, 59–60 (Tex.1991); *Walker,* 827 S.W.2d at 841–42.

Unlike *Collom,* the record before us does not reflect that the trial court expressly disregarded a mandatory statutory deadline requirement to dismiss the claims against relators where no report was filed for over two years. Here, the trial court found the report was a good faith effort under Article 4590i. Thus, the record does not support the conclusion that the trial judge violated a ministerial duty to dismiss the suit against relators. Under his finding, the trial court could not dismiss the case. Nor is there evidence that the remedy of ordinary appeal, given the state of the record, is inadequate to meet the legislative intent of reducing so called frivolous lawsuits. There is not a scintilla of proof that this death claim is frivolous. I would hold that under relator's motion, it is not the prerogative of appellant courts to issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts. *Iley,* 311 S.W.2d at 651–52. Accordingly, I would conclude that relators have not shown they are entitled to the extraordinary relief requested.

---

(3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling." [Emphasis added].

**5.** I would also note relator's unfettered ability to file a no-evidence or traditional motion for summary judgment, should either or both be appropriate. *See* TEX.R.CIV.P. 166a(c) & (i).