COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CORINA BUSTILLOS and
VIRGINIA                )

BUSTILLOS, As Survivors and
Heirs at Law of    )

the Estate of RAQUEL
ARRIOLA, Decedent,       )             
No.  08-04-00331-CV

and the ESTATE OF RAQUEL
ARRIOLA,          )

                                                                              )                   Appeal from the

Appellants,                         )

                                                                              )               
34th District Court

v.                                                                           )

                                                                              )         
of El Paso County, Texas

PATRICIA ROWLEY, M.D.,                               )

                                                                              )                
(TC# 2002-927)

Appellee.                           )

                                                                              )

 

 

O
P I N I O N

 

Appellants Corina
Bustillos and Virginia Bustillos, as Survivors and Heirs at Law of the Estate
of Raquel Arriola, Deceased, and the Estate of Raquel Arriola appeal from the
dismissal of their medical malpractice claim against Appellee Patricia Rowley,
M.D. (ARowley@). 
In the lawsuit, Appellants asserted claims against Rowley for negligent
emergency physician care and treatment of their mother, Raquel Arriola, which
the Appellants alleged caused her death. 
The Appellants contend that the trial court erred in granting Rowley=s motion to dismiss because:  (1) Rowley waived her statutory right to
challenge the adequacy of the expert reports; and (2) the two expert reports
provided by Appellants satisfied the requirements under the former Texas
Medical Liability and Insurance Improvement Act (Athe
Act@). 
We reverse and remand.








Late in the
evening on March 4, 2000, Raquel Arriola was admitted to the emergency room at
Sierra Medical Center in El Paso, Texas. 
Upon admission, Ms. Arriola complained of pleuritic chest pain, chills,
headache, diarrhea, and nausea.  Her
medical history revealed systemic lupus erythematosus and spleen removal.  Rowley, the examining emergency room physician,
ordered a chest x-ray, ECG, and certain laboratory tests.  Ms. Arriola decompensated and arrested at
3:42 a.m.  She was resuscitated and
admitted to the intensive care unit, but arrested again at 5:18 a.m. and could
not be revived.








On March 5, 2002,
the Appellants, Ms. Arriola=s
surviving children and her estate, brought a medical malpractice suit against
Rowley and Tenet Hospitals Limited (ATenet@), the operator of the hospital under
the Act.[1]  With regard to Rowley, the Appellants alleged
in their amended petition that Rowley failed to properly and timely diagnosis
and treat Ms. Arriola=s
infection, cardiac condition, and pleural effusion, failed to order continuous
monitoring of Ms. Arriola=s
oxygen saturation level, failed to timely follow-up on physician orders for
administration of antibiotics, failed to order a CT scan prior to lumbar
puncture, and failed to order two blood independent cultures for Ms.
Arriola.  The Appellants alleged the
hospital was negligent because hospital staff took no action to address the
abnormal ECG results, electrolyte imbalance, mild respiratory desaturation, or
low white blood cell count and failed to monitor Ms. Arriola=s vital signs or her cardiac
condition.  The Appellants further
alleged that as a result of Rowley=s
and the hospital employees=
failure to properly and timely monitor and treat Ms. Arriola=s infection, cardiac condition, and
subsequent respiratory distress, Ms. Arriola suffered a full respiratory and
cardiac arrest and died.[2]

On September 3,
2002, Appellants filed two expert reports and curricula vitae from Paul K.
Bronston, M.D. and Margaret Bowers, R.N., to satisfy the expert report
requirements of the Act.  See
former Tex.Rev.Civ.Stat.Ann. art.
4590i, '
13.01(d)(Repealed 2003).  On October 2,
2002, codefendant Tenet filed a motion to dismiss in which it challenged the
adequacy of Dr. Bronston=s
and Nurse Bowers=
reports.  Shortly thereafter, Rowley=s counsel and Appellants= counsel entered into a Rule 11
agreement that extended Appellants=
deadline to file the expert reports until November 24, 2002.








According to the
court docket sheet, the trial court denied Tenet=s
motion to dismiss on January 13, 2003.[3]  Tenet brought an original proceeding in this
Court to challenge the trial court=s
decision and sought mandamus relief.  See
In re Tenet Hosps. Ltd., 116 S.W.3d 821 (Tex.App.--El Paso 2003, orig.
proceeding).  In In re Tenet Hosps.
Ltd., this Court concluded that the trial court had abused its discretion in
denying Tenet=s motion
because the two expert reports provided had wholly failed to address the causal
relationship between the breach of the standard of care and Ms. Arriola=s death.  In re Tenent Hosp., Ltd., 116 S.W.3d
at 826-27.  Thus, this Court found that
Bronston=s and
Bowers= reports
did not constitute a good faith effort to comply with the definition of an
expert report under former Section 13.01(r)(6). 
See id. at 827; former Tex.Rev.Civ.Stat.Ann.
art. 4590i, '
13.01(r)(6).  On March 15, 2004, the
trial court granted Tenet=s
motion to dismiss and for sanctions and Tenet was dismissed from the suit.








On July 26, 2004,
Rowley filed a motion to dismiss, in which she argued that neither
Dr. Bronston=s nor
Nurse Bowers= reports
satisfied the requirements of an expert report under former Section 13.01(r)(6)
of the Act.  Rowley later amended her
motion to also challenge Appellants=
filed expert report from Robert J. Levine, M.D. 
In addition to her previous contentions, Rowley also argued that Dr.
Levine=s report
failed to satisfy the requirements of an expert report and had not been timely
filed pursuant to the parties=
Rule 11 agreement.  In response to Rowley=s motion, Appellants stated that Rowley=s challenge to Nurse Bowers= report was not relevant to their
claims asserted against her.  With regard
to her attack on the reports of Drs. Bronston and Levine, Appellants argued
that Dr. Levine=s report
was both timely and adequate, and that taken together, the Bronston and Levine
reports adequately addressed all required elements of the Act.[4]  In addition, Appellants asserted that Rowley
had impliedly waived her right to challenge the reports by:  (1) her delay in filing her motion to
dismiss; and (2) her conduct in filing a Letter Brief to this Court in the In
re Tenet Hosps. Ltd. mandamus proceeding, in which she stated to the Court
that she Adid not
object to the expert reports of Margret [sic] Bowers, R.N. and Paul K.
Bronston, M.D., and ha[d] no true interest in the outcome of this Court=s ruling.@

The trial court
granted Rowley=s motion
to dismiss and this appeal now follows.

WAIVER

In their first
issue, Appellants argue that Rowley waived her right to complain about the
adequacy of expert reports because she declared she had no interest in the
outcome of dismissal proceedings brought by Tenet, a similarly situated
codefendant, in its petition for mandamus relief.  Appellants contend that by her conduct,
specifically, making certain statements in a Letter Brief filed with this Court
in reply to Tenet=s
mandamus proceedings, coupled with her lengthy delay in filing her motion to dismiss,
Rowley impliedly waived her statutory right to challenge the expert reports in
this case.








Former Section
13.01 of the Act requires a plaintiff to provide each defending physician or
health care provider with one or more expert reports, with a curriculum vitae
of each expert listed in the report, within 180 days of filing a health care
liability claim or the last day of any extended period as permitted under the
statute.  Former Tex.Rev.Civ.Stat.Ann. art. 4590i, ' 13.01(d).  Where an expert report is tendered, the
defendant may challenge the adequacy of the report.  See id. at '
13.01(l); Hart v. Wright, 16 S.W.3d 872, 876 (Tex.App.--Fort
Worth 2000, pet. denied).  The trial
court is authorized to grant a motion to dismiss Aonly
if it appears to the court, after hearing, that the report does not represent a
good faith effort to comply with the definition of an expert report in
Subsection (r)(6) of this section.@  Former Tex.Rev.Civ.Stat.Ann.
art. 4590i, ' 13.0(l);
Am. Transitional Care Ctrs. Of Texas, Inc. v. Palacios, 46 S.W.3d 873,
878-79 (Tex. 2001).

Former Section
13.01 imposes no statutory deadline for a defendant physician or health care
provider to file a motion to dismiss.[5]  See Jernigan v. Langley, 111 S.W.3d
153, 156 (Tex. 2003); former Tex.Rev.Civ.Stat.Ann.
art 4590i, '
13.01.  However, a defendant may waive
the right to dismissal if the defendant=s
silence or inaction is inconsistent with the intent to rely upon that
right.  Jernigan, 111 S.W.3d at
157.  The mere fact that a defendant
waits to file a motion for dismissal is insufficient to establish waiver.  Id. 
As the Jernigan Court explained, waiver is largely a matter of
intent, and for implied waiver to be found through a party=s actions, intent must be clearly
demonstrated by the surrounding facts and circumstances.  Id. at 156-57, citing Motor
Vehicle Bd. v. El Paso Indep. Auto Dealers Ass=n,
Inc., 1 S.W.3d 108, 111 (Tex. 1999). There is no waiver of a right if the
person sought to be charged with waiver says or does nothing inconsistent with
an intent to rely upon such right.  Id.,
at 156, citing Maryland Cas. Co. v. Palestine Fashions, Inc., 402
S.W.2d 883, 888 (Tex. 1966).

Appellants assert
that Rowley engaged in conduct beyond mere delay in filing her motion to
dismiss by the affirmative statements she made in her Letter Brief to this
Court in reply to Tenet=s
petition for writ of mandamus.  In her
Letter Brief, Rowley stated:

COMES NOW, PATRICIA
ROWLEY M.D., and submits this letter brief in reply to Relator=s Petition for Writ of Mandamus
pursuant to this Court=s
order of February 19, 2003.  Dr. Rowley
did not object to the expert reports of Margret [sic] Bowers, R.N. and Paul K.
Bronston, M.D., and has no true interest in the outcome of this Court=s ruling.  Therefore, Rowley waives her right to file
any response to Relators Petition unless otherwise ordered by this Court.








Appellants maintain that Rowley=s conduct in declaring that she did not
want to object or otherwise participate in the mandamus proceeding, in addition
to her delay, was inconsistent with preserving her statutory right to challenge
the reports pertaining to the claims asserted against her.

Considering the
undisputed facts and circumstances, we conclude Rowley=s
actions were not inconsistent with an intent to assert her right to challenge
the sufficiency of the expert reports. 
Codefendant Tenet filed a motion to dismiss and for sanctions, in which
it challenged the adequacy of Dr. Bronston=s
and Nurse Bowers=
reports.  Rather than seek dismissal,
Rowley and codefendant Staff Care, Inc. agreed with Appellants to extend the
deadline to file expert reports.  See
former Tex.Rev.Civ.Stat.Ann. art.
4590i, '
13.01(h)(AThe
affected parties may agree to extend any time period specified in Subsection
(a) or (d) of this section.@).  Rowley=s
decision not to file a motion to dismiss contemporaneously with Tenet or to
join Tenet in its motion, was not inconsistent with an intent to later assert
her right to dismissal.  Rather, Rowley=s conduct indicates an attempt to
obtain additional information with respect to the merits of the claims asserted
against her before seeking dismissal of the suit.








Moreover, Rowley=s conduct in filing the Letter Brief
with this Court in Tenet=s
mandamus proceeding is also insufficient to establish waiver.  Rowley=s
statements clearly indicate her desire to inform this Court of the procedural
posture of the underlying case, that is, Tenet, not she, had objected to the
expert reports filed in the case. 
Because Rowley was not a party to Tenet=s
motion, she correctly represented to this Court that she was not entitled to
mandamus relief, the outcome sought by Tenet in its petition.  Rowley=s
statements were not inconsistent with an intent to assert the right to
dismissal on her own behalf.  Therefore,
we reject Appellants=
waiver contention.  Issue One is
overruled.

ADEQUACY
OF EXPERT REPORTS

In their second
issue, Appellants argue that the trial court abused its discretion in granting
Rowley=s motion
to dismiss because the expert reports from Dr. Bronston and Dr. Levine
satisfied the requirements of the Act. 
Specifically, Appellants assert that reports of Drs. Bronston and
Levine, taken together, adequately addressed all the required elements of the
Act in order to inform the trial court that their claim was not frivolous.

Standard
of Review

We review the
trial court=s
granting of a Section 13.01 motion to dismiss under an abuse of discretion
standard.  Palacios, 46 S.W.3d at
877.  An abuse of discretion exists when
a trial court acts in an arbitrary or unreasonable manner or without reference
to any guiding principles.  See Garcia
v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  A trial court does not abuse its discretion
merely because it decides a matter within its discretion differently than an
appellate court would do in a similar circumstance.  Downer, 701 S.W.2d at 242.

Expert
Report Requirement








If a claimant
timely furnishes an expert report, a defendant may file a motion challenging
the adequacy of the expert report.  See
former Tex.Rev.Civ.Stat.Ann. art.
4590i, '
13.01(d), (e), & (l).  The
trial court shall grant the motion only if it appears to the court, after
hearing, that the report does not represent a good faith effort to comply with
the statutory definition of an expert report. 
See id. at '
13.01(l).  The statute defines an
expert report as a written report by an expert that provides a fair summary of
the expert=s
opinions as of the date of the report regarding: (1) applicable standards of
care; (2) the manner in which the care rendered by the physician or health care
provider failed to meet the standards; and (3) the causal relationship between
that failure and the injury, harm, or damages claimed.  See former Tex.Rev.Civ.Stat.Ann. art. 4590i, '
13.01(r)(6).

Although a report
need not marshal all the plaintiff=s
proof, it must include the expert=s
opinions on the three elements identified in the statute.  Palacios, 46 S.W.3d at 878-79.  In detailing these elements, the report must
provide enough information to fulfill two purposes if it is to constitute a
good faith effort.  First, the report
must inform the defendant of the specific conduct the plaintiff has called into
question.  Id. at 879.  Second, and equally important, the report
must provide a basis for the trial court to conclude that the claims have
merit.  Id.  All of the relevant information must be
contained within the four corners of the report.  Id. at 878.  If a report omits any of the statutory
elements, it cannot constitute a good faith effort.  Id. at 879.

Dr.
Bronston=s Expert
Report

In this case, Dr.
Bronston=s report
provided the following:

$                  
Ms. Arriola was a 58 year old Latina female with
a history of systemic lupus erythematosus, Sjogren Syndrome and status post
splenectomy in 1992.  She had been on
chronic Prednisone and Plaquenil therapy at the time of her visit to the Sierra
Medical Center Emergency Department in El Paso, Texas on 3/4/00 at 23:30.  She was seen by Dr. Patricia Rawley
[sic] at 00:30 on 3/5/00.

 

$                  
She decompensated and arrested at about 03:42 on
3/5/00.  She was resuscitated, placed on
Dopamine for her hypotension and admitted to the ICU by Dr. Jesus Gomez.  While in the ICU she arrested again at 05:18
and pronounced dead at 05:42.

 

$                  
There were a number of violations of the
standard of care in her care and treatment:

Antibiotics were ordered but she never
received them;

She was not continuously monitored by
a pulse oxymeter;

There was no cardiac monitoring which
should have been instituted at the beginning of her admission;








This was a violation of the standard
of care and of Sierra Medical Center=s
own Chest Pain protocol;

Her vital signs needed to be monitored
more frequently; 

She should have been administered IV
Sodium Bicarbonate.

 

Dr. Bronston concluded that the
patient needed to have been closely monitored regarding her vital signs, her
acidosis, and her increasing hypoxia and restlessness.  Timely antibiotics should have been
administered and the acidosis and hypoxia should have been corrected.  As we concluded in our review of the same
expert report in In re Tenet Hosps. Ltd., we again conclude that while
Dr. Bronston=s report
sufficiently explained the applicable standard of care and the manner in which
the doctor and hospital staff allegedly breached the standard of care, it
wholly failed to address the causal relationship between the breach and Ms.
Arriola=s
death.  See In re Tenet Hosps. Ltd.,
116 S.W.3d at 826-27.

Dr.
Levine=s Expert
Report

In Dr. Levine=s report, he stated the following
pertinent information:

$                  
I am familiar with the standard of care of an
emergency medicine department when a patient presents with recent onset of
chest pain.

 

$                  
The fundamental purpose of emergency medicine is
to stabilize the patient entering the emergency department and to assess their
ongoing medical needs.  Emergency
department personnel should monitor vital signs and cardiac function and
appropriately treat any symptoms indicating instability. 

 

$                  
I am familiar with the effects of failure to
monitor and treat a patient that has pulmonary edema that may lead to cardiac
arrest, such as in the case of Ms. Arriola.

 

$                  
I am familiar with the effect of appropriate
treatment for the incrementally worsening symptoms of pulmonary edema that may
in fact prevent cardiac arrest.

 








$                  
According to the autopsy, Ms. Arriola died from
pulmonary edema and cardiac arrhythmia. 
When Ms. Arriola arrived at Sierra Medical Center, she was triaged as a
Level II and a Chest Pain Protocol was instituted.  Ms. Arriola experienced a cardio-vascular
collapse, which could have been prevented if she had been properly monitored by
the emergency department personnel.  This
monitoring responsibility is based on the hospital=s
own chest pain protocol and the appropriate standard of medical care and
includes repeat:  cardiac monitoring,
blood pressure, respiratory rate, pulse, temperature, oxygen saturation, and
blood gases.

 

$                  
Records show an absence of appropriate
monitoring by the emergency department personnel after 1:10, the time the first
blood gas results were received.

 

$                  
It is more likely than not that if Ms. Arriola
had been properly monitored, her pulmonary edema would have been detected and
treated.  If Ms. Arriola had been
properly monitored her cardiac arrhythmia would have been detected and treated.

 

$                  
It is probable that her vital signs changed
gradually over the period of time between admission and the first cardiac
arrest.  Monitoring of Ms. Arriola=s vitals at intervals over this time
period could have created information that would had led to appropriate
treatment and could have prevented her cardio-vascular collapse.  

 

$                  
It is more likely than not that Ms. Arriola did
not die of an overwhelming blood infection as her autopsy does not indicate the
presence of this degree of infection.

 








An expert report
need not include a full statement of the applicable standard of care and how it
was breached, but a fair summary must set out what care was expected, but not
given.  See Palacios, 46 S.W.3d at
880.  Here, Dr. Levine=s report provided sufficient specific
information about what Rowley should have done differently.  The report succinctly states that the
appropriate standard of care for emergency department personnel in this case
was repeat monitoring of vital signs and cardiac function including, blood pressure,
respiratory rate, pulse, temperature, oxygen saturation, and blood gases, and
to appropriately treat any symptoms indicating instability.  Dr. Levine indicated in his report that
failure to monitor and treat Ms. Arriola=s
pulmonary edema led to her cardiac arrest. 
He also indicated that appropriate treatment for the incrementally
worsening symptoms of pulmonary edema may in fact prevent cardiac arrest.  According to Dr. Levine=s report, the medical records showed an
absence of appropriate monitoring by the emergency department personnel after
1:10 a.m.  We conclude that
Dr. Levine=s report
fairly summarized the alleged standard of care and how that standard of care
was breached.








The report also
provides a fair summary of Dr. Levine=s
opinions as to the causal relationship between Rowley=s
alleged breach and the harm claimed.  The
report states that if Ms. Arriola had been properly monitored, her pulmonary
edema and cardiac arrhythmia would have been detected and treated.  According to Dr. Levine, appropriate
treatment for incrementally worsening symptoms of pulmonary edema may in fact
prevent cardiac arrest.  The report
clearly indicates that if Ms. Arriola=s
vital signs had been regularly monitored between her admission and first
cardiac arrest, emergency department personnel could have had information which
would have led to appropriate treatment and could have prevented her
cardio-vascular collapse.  The report
states that the cardio-vascular collapse Ms. Arriola experienced could have
been prevented if she had been properly monitored by the emergency department
personnel.  Although not eloquently
stated, Dr. Levine=s
statements adequately address causation by indicating that if Ms. Arriola had
been properly monitored, emergency department personnel could have detected and
treated the worsening symptoms of Ms. Arriola=s
pulmonary edema, the life-threatening condition which was aggravated by the
preventable conditions of cardio-vascular collapse and cardiac arrest and cause
of her death.  See In re Tenet Hosps.
Ltd., 116 S.W.3d at 826 (the words Acause@ or Acausation@ do not have to be used as long as a
substitute word, phrase, or reference is used); see also Bowie Memorial
Hosp. v. Wright, 79 S.W.3d 48, 53 (Tex. 2002)(expert need not express the
causal relationship in terms of magic words such as Areasonable
medical probability@).  Therefore, we conclude Dr. Levine=s report constitutes a good faith
effort to comply with the statutory definition of an expert report.  We conclude the trial court abused its
discretion in dismissing the case. 
Appellant=s Issue
Two is sustained.

We reverse the
trial court=s order
of dismissal and remand this cause to the trial court for further proceedings.

 

 

 

August
31, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ











[1]
In 2003, the Legislature repealed the Act, effective September 1, 2003, and
replaced it with Chapter 74 of the Civil Practices and Remedies Code.  See Acts of 1977, 65th Leg., R.S., ch.
817, 1977 Tex.Gen.Laws 2039,
2039-2053, amended by Acts of 1993, 73rd Leg., R.S., ch. 625, ' 3, 1993 Tex.Gen.Laws 2347, 2347-49, amended by Acts of 1995, 74th
Leg., R.S., ch. 140, ' 1,
1995 Tex.Gen.Laws 985,
985-989)(former Tex.Rev.Civ.Stat.Ann.
art. 4590i, ''
1.01-16.02, the AMedical
Liability and Insurance Improvement Act@),
repealed by Acts of 2003, 78th Leg., R.S., ch. 204, '
10.09, 2003 Tex.Gen.Laws 847, 884
(current version at Tex.Civ.Prac.&
Rem.Code Ann. '
74.001 et seq. (Vernon 2005)(eff. Sept. 1, 2003)).  This case was filed prior to September 1,
2003, therefore, we will refer to the repealed statute throughout this opinion
as it is the version applicable to this case.





[2]
The plaintiffs= petition
was later amended to add Staff Care, Inc. as a defendant in their lawsuit.  Staff Care, Inc. was the staffing agency that
had entered into a physician services agreement with Rowley to provide emergency
medicine services to Staff Care, Inc=s
clients as an independent contractor. 
According to the trial court=s
docket sheet, Staff Care, Inc. was non-suited on September 13, 2004.





[3]
Neither Tenet=s motion
to dismiss nor the trial court=s
order denying that motion were included in the record for this appeal.





[4]
Apparently, Rowley was challenging the same expert report from Dr. Bronston
that this Court had found to have been deficient for purposes of satisfying the
statutory requirements of an expert report. 
The parties agree that the Bronston report attacked by Rowley in her
motion is, in fact, the same Bronston report we discussed at length in In re
Tenet Hosps. Ltd., 116 S.W.3d 821 (Tex.App.--El Paso 2003, orig.
proceeding).





[5]
Under the current version of the statute, a defendant physician or health care
provider must file and serve any objection to the sufficiency of an expert
report no later than twenty-one days after being served with the report or all
objections are waived.  See Tex.Civ.Prac.& Rem.Code Ann. ' 74.351(a)(Vernon 2005).